# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
RICHARD A. SIEGEL, *et al.*,            )
                                        )
        Plaintiffs,                     )
                                        )
            v.                          )         Case No. 16-cv-2288 (RDM)
                                        )
UNITED STATES DEPARTMENT                )
OF THE TREASURY, *et al.*,              )
                                        )
        Defendants.                     )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

CHANNING D. PHILLIPS
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

STEPHEN M. PEZZI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone (202) 305-8576; Fax (202) 616-8470
Email: stephen.pezzi@usdoj.gov
D.C. Bar No. 995500

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

LEGAL STANDARD..................................................................................................... 3

ARGUMENT ................................................................................................................. 3

I.      PLAINTIFFS LACK STANDING. .................................................................... 4

      A.      Plaintiffs allege no cognizable Article-III injury. .................................... 4

      B.      Plaintiffs Kateeb's and Ali's injuries were neither caused by Defendants, nor are they redressable by the federal judiciary. .................................... 6

            1.      Causation.................................................................................... 7

            2.      Redressability............................................................................ 8

II.     PLAINTIFFS HAVE NO VALID CAUSE OF ACTION.............................. 10

      A.      Plaintiffs' claims are not cognizable under the Administrative Procedure Act.............................................................................................. 11

      B.      Plaintiffs' claims are not cognizable under the Mandamus Act. .......... 12

      C.      Plaintiffs' claims are not cognizable under the Little Tucker Act. ....... 13

      D.      Plaintiffs' claims are not cognizable under any other source of domestic, international, or foreign law................................................................. 13

III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE POLITICAL-QUESTION DOCTRINE. .................................................................................................. 14

CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Abulhawa v. Dep't of the Treasury*,
   ---F. Supp. 3d---, No. 15-cv-2186, 2017 WL 883609 (D.D.C. Mar. 4 2017) .................... 14, 17

*Abusharar v. Hagel*,
   77 F. Supp. 3d 1005 (C.D. Cal. 2014) ............................................................................. 14, 17

*Aerotrade Inc. v. Agency for Int'l Dev., Dep't of State*,
   387 F. Supp. 974 (D.D.C. 1974) ............................................................................................ 10

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................................ 14

*Allen v. Wright*,
   468 U.S. 737 (1984), *abrogated in part on other grounds*,
   *Lexmark Int'l Inc. v. Static Control Components Inc.*, 134 S. Ct. 1377 (2014). .................. 5, 8

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011) .................................................................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 3

*Atl. Tele-Network v. Inter-Am. Dev. Bank*,
   251 F. Supp. 2d 126 (D.D.C. 2003) ........................................................................................ 16

*Baker v. Carr*,
   369 U.S. 186 (1962) ..................................................................................................... 15, 16, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 3

*Bernstein v. Kerry*,
   962 F. Supp. 2d 122 (D.D.C. 2013), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014) ...................... 8, 10

*Betteroads Asphalt Corp. v. United States*,
   106 F. Supp. 2d 262 (D.P.R. 2000) .......................................................................................... 9

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) ................................................................................................................ 16

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................................................... 9

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ............................................................................................... 4, 9

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) ...................................................................................... 11

*Corrie v. Caterpillar, Inc.*,
503 F.3d 974 (9th Cir. 2007) ......................................................................................... 17

*Del Monte Fresh Produce N.A., Inc. v. United States*,
706 F. Supp. 2d 116 (D.D.C. 2010) ............................................................................... 12

*Dickson v. Ford*,
521 F.2d 234 (5th Cir. 1975) ......................................................................................... 17

*Doe I v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005) ..................................................................... 14, 15, 16

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) ......................................................................................... 7, 8

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990) .......................................................................................................... 4

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS*,
490 F.3d 940 (Fed. Cir. 2007) ........................................................................................ 13

*Hein v. Freedom from Religion Found.*,
551 U.S. 587 (2007) ........................................................................................................... 6

*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) ........................................................................................ 12

*Kursar v. TSA*,
581 F. Supp. 2d 7 (D.D.C. 2008) ...................................................................................... 3

*Lee v. Thornton*,
420 U.S. 139 (1975) ......................................................................................................... 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................................. passim

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ......................................................................................................... 11

*Mahorner v. Bush*,
224 F. Supp. 2d 48 (D.D.C. 2002), *aff'd*,
Case No. 02-5335, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003) ......................... 6, 17

*Mobarez v. Kerry*,
  187 F. Supp. 3d 85 (D.D.C. 2016) ................................................................. 17

*Norton v. S. Utah Wilderness,
  All.*, 542 U.S. 55 (2004) ........................................................................... 11

*Oetjen v. Cent. Leather Co.*,
  246 U.S. 297 (1918) ................................................................................. 15

*RCM Techs., Inc. v. DHS*,
  614 F. Supp. 2d 39 (D.D.C. 2009) ............................................................. 12

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ................................................................... 15

*Smith v. Obama*,
  217 F. Supp. 3d 283 (D.D.C. 2016) ........................................................... 16

*Smith v. United States*,
  No. 16-cv-1610 (TSC), 2017 WL 758479 (D.D.C. Feb. 27, 2017) .................. 6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................... 4

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ..................................................................................... 3

*Talenti v. Clinton*,
  102 F.3d 573 (D.C. Cir. 1996) ................................................................... 10

*Tel-Oren v. Libyan Arab Republic*,
  726 F.2d 774 (D.C. Cir. 1984) ................................................................... 15

*Van Drasek v. Lehman*,
  762 F.2d 1065 (D.C. Cir. 1985) ................................................................. 13

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
  566 U.S. 189 (2012) ................................................................................. 15

## STATUTES

5 U.S.C. § 551 .............................................................................................. 11

5 U.S.C. § 706 .............................................................................................. 11

18 U.S.C. § 2441 .......................................................................................... 14

22 U.S.C. § 441 ............................................................................................ 14

28 U.S.C. § 1346 ................................................................................................................. 13

28 U.S.C. § 1361 ................................................................................................................. 12

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................ 14

Fed. R. Civ. P. 12 ................................................................................................................ 3

Fed. R. Civ. P. 25 ................................................................................................................ 2

**U.S. CONSTITUTION**

U.S. Const. art. I, § 8 ........................................................................................................ 14

U.S. Const. art. III, § 1 ....................................................................................................... 4

U.S. Const. art. III, § 2 ....................................................................................................... 4

## INTRODUCTION

For decades, the United States of America and Israel have enjoyed a strong relationship built on a mutual commitment to democratic values and shared security interests in the Middle East.  Significant financial support from the United States has been a longstanding facet of that relationship.  Plaintiffs vociferously disagree with this longstanding policy of the United States, as is their right.  To vindicate that disagreement, however, Plaintiffs are improperly seeking relief from the judicial branch that would halt all U.S. financial assistance to Israel.  Because none of the Plaintiffs has suffered a concrete injury caused by Defendants that is redressable by the federal judiciary, this case should be dismissed for lack of Article-III standing.  In addition, none of the domestic or international sources of law relied upon by Plaintiffs creates a private cause of action that would allow them to bring a lawsuit of this kind, which also independently warrants dismissal. Finally, the political-question doctrine independently bars Plaintiffs' claims, because Plaintiffs challenge sensitive foreign-affairs judgments committed squarely to the political branches.  For any or all of these reasons, Plaintiffs' claims should be dismissed.

## BACKGROUND

Plaintiffs filed this action on November 16, 2016, Docket No. 1, and filed an Amended Complaint on November 21, 2016, Docket No. 2.  Plaintiffs completed service of process on April 10, 2017.  Docket No. 21.  The Amended Complaint (hereinafter, "Complaint" or "Compl.") names 28 individuals as plaintiffs, and asserts claims against the following defendants: the United States Department of the Treasury, Secretary of the Treasury Steven T. Mnuchin, the United States Department of State, Secretary of State Rex W. Tillerson, the United States Department of

Defense, and Secretary of Defense James Mattis ("Defendants" or "the government").[1]  Plaintiffs'

Complaint is lengthy, and the vast majority of its allegations are irrelevant to the issues raised in

this motion.[2]

In sum, Plaintiffs allege that "the Israeli army and belligerent settlers," in what Plaintiffs

refer to as "the Occupied Palestinian Territories" or "OPT," "with U.S. taxpayer assistance, have

been murdering and maiming Palestinians for at least thirty years and depriving them of

fundamental human rights."   Compl. at 4.   Plaintiffs allege that this American "taxpayer

assistance" has come in the form of direct and indirect "financial and military aid to Israel," from

each of the defendant agencies, in violation of "numerous congressional mandates and resolutions,

[the defendant agencies'] own rules and regulations and U.S. and international human rights

conventions."  *Id.* at 2.

Plaintiffs seek an order from this Court that would "end all financial and military aid to

Israel based on these clear congressional mandates," and would "stop financing Israel's Master

Plan which was implemented in 1982 to de-nationalize the entire Palestinian population."  *Id.* at

2-3.

---

[1] Each of the individual defendants are named only in their official capacities.  Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of the Treasury Steven T. Mnuchin has been substituted as a defendant, in his official capacity, for former Secretary of the Treasury Jacob Lew; Secretary of State Rex W. Tillerson for former Secretary of State John Kerry; and Secretary of Defense James Mattis for former Secretary of Defense Ashton B. Carter.  *See* Feb. 14, 2017 Minute Order; Fed. R. Civ. P. 25(d).

[2] The Complaint also contains significant factual overlap with a similar complaint—filed by the same counsel, on behalf of some of the same plaintiffs—recently dismissed by this Court for lack of standing.  *See generally Abulhawa v. Dep't of the Treasury*, --- F. Supp. 3d ----, No. 15-cv-2186 (RDM), 2017 WL 883609 (D.D.C. Mar. 4, 2017).

**LEGAL STANDARD**

Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(1), (b)(6).

Plaintiffs bear the burden of demonstrating that the Court has subject-matter jurisdiction over their claims.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  Where, as here, a defendant challenges jurisdiction on the face of the complaint, the complaint must be dismissed unless it includes allegations of sufficient facts to establish jurisdiction.  *Kursar v. TSA*, 581 F. Supp. 2d 7, 14 (D.D.C. 2008).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" nor do "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  Courts, moreover, do not assume the truth of legal conclusions included in the complaint.  *Id.*

**ARGUMENT**

Plaintiffs' complaint should be dismissed for any one of three independent reasons.  First, none of the Plaintiffs has standing.  None has adequately alleged a cognizable Article-III injury, and the two who have adequately alleged any injuries at all did not suffer them as a result of any actions by the United States, nor would a judicial ruling redress their alleged harm.  Second, Plaintiffs' sweeping challenge to decades of government-wide foreign policy is not cognizable under any of the statutes (or other sources of legal authority) that Plaintiffs rely on.  Third, the political-question doctrine bars judicial second-guessing of the sensitive foreign-affairs judgments

3

that have been made by the political branches regarding financial support for Israel.  For any or all of these reasons, this case should be dismissed.

## I.      PLAINTIFFS LACK STANDING.

The most straightforward reason why Plaintiffs' claims should be dismissed is that none of them has Article-III standing.  "The judicial Power of the United States," U.S. Const. art. III, § 1, extends only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Standing doctrine is "rooted in the traditional understanding of a case or controversy," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and "serves to prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).  "[T]he irreducible constitutional minimum of standing" requires that a plaintiff (1) have suffered an injury in fact, (2) that is caused by the defendant's conduct, and (3) that is likely to be redressed by a favorable ruling.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs bear the burden of alleging facts to establish each element.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  These facts "must affirmatively appear in the record" and "cannot be inferred argumentatively from averments in the pleadings."  *Id.* (internal quotation marks omitted).  Most of the Plaintiffs meet none of these requirements; none of the Plaintiffs meets all of these requirements.  Accordingly, this case should be dismissed for lack of standing.

### A.      Plaintiffs allege no cognizable Article-III injury.

Notwithstanding the fact that Plaintiffs bear the burden of alleging sufficient facts to establish Article-III standing, *City of Dallas*, 493 U.S. at 231, the Complaint contains precious

little information about any of the plaintiffs.[3]   The Complaint alleges the following facts about

"[a]ll plaintiffs," collectively:

- "All of the Plaintiffs named herein are American taxpayers and are concerned about the fact that: (a) their American aid dollars, in violation of the U.S. Constitution and six acts of Congress, are going to fund the violation [sic] subjugation of a civilian population and their denationalization; (b) that funding impacts negatively the image that America has especially in the Muslim world and the Middle East and encourages violent attacks on American citizens travelling or performing military services abroad.   They are all aware that: (a) Congress has enacted legislative initiatives, i.e. the FAA and the Leahy Law; and (b) believe that the congressional mandates recited in those statutes should be enforced and hereby ask the Court to render this limited relief."   Compl. ¶ 19.

- "All plaintiffs are concerned and knowledgeable about the ongoing well-documented brutal occupation maintained by Israeli [sic] and the murder of American citizens, like Rachel Corrie, by Israeli army personnel."   Compl. ¶ 20.

- "All Plaintiffs named herein know that there are clear congressional mandates that these agencies are not adhering to which provide a valid basis for the termination of all financial and military aid to Israel."   Compl. ¶ 21.

These allegations, even if presumed true, do not satisfy Article III's injury-in-fact requirement.   The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."   *Lujan*, 504 U.S. at 573-74; *see also, e.g.*, *Allen v. Wright*, 468 U.S. 737, 755 (1984) ("Respondents here have no standing to complain simply that their Government is violating the law."), *abrogated in part on other grounds by Lexmark Int'l Inc. v. Static Control Components,*

---

[3] The Complaint contains certain allegations that are specific to plaintiffs Linda Kateeb and Ali Ali, which are addressed separately below.   *See infra*, Section I.B (explaining why any injuries to plaintiffs Kateeb and Ali were not caused by Defendants and are not redressable by the federal judiciary).

*Inc.*, 134 S. Ct. 1377 (2014).   And that is what Plaintiffs allege here—that the government is behaving in a way that they disagree with, and that they believe to be unlawful.

Equally meritless is Plaintiffs' suggestion that their payment of federal taxes gives them standing to challenge the government's policy toward Israel.   "[T]he mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court."   *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011).   The one "narrow exception to the general constitutional prohibition against taxpayer standing," *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 602 (2007) (plurality opinion), permits certain Establishment Clause challenges to statutory spending measures, *id.* at 602-03.   But because none of Plaintiffs' claims arises under the Establishment Clause, that exception does not apply here.   *See, e.g.*, *Smith v. United States*, No. 16-cv-1610 (TSC), 2017 WL 758479, at *3 (D.D.C. Feb. 27, 2017) (dismissing challenge to foreign aid to Israel for lack of standing, rejecting plaintiff's argument for standing as a federal taxpayer); *Mahorner v. Bush*, 224 F. Supp. 2d 48, 50-51 (D.D.C. 2002) (same), *aff'd*, Case No. 02-5335, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003).

Accordingly, no plaintiff has standing based on the foregoing allegations of injury.

**B.**   **Plaintiffs Kateeb's and Ali's injuries were neither caused by Defendants, nor are they redressable by the federal judiciary.**

Two plaintiffs, Linda Kateeb and Ali Ali, allege that they are "Palestinian Americans who have standing to sue the agency defendants whose funding made possible the illegal confiscation of their property in violation of the Fifth Amendment and the Law of Nations Clause in the Constitution."   Compl. ¶ 9; *see also id.* ¶ 4 ("The brutal criminal activity and the illegal confiscation of private property also violates the Fifth Amendment rights of Plaintiffs Kateeb and Ali.   They both lost their private property located in the OPT without due process of law.").   Setting aside the legal conclusions embedded within these allegations, while an alleged "confiscation of

6

their property," if it happened as described, could constitute an Article-III injury-in-fact, here these Plaintiffs still lack standing because any such alleged injury was not caused by Defendants and is not redressable by this Court.

### 1.    *Causation*

The causation prong of the standing analysis asks whether "it is substantially probable that the challenged acts of the defendant, not of some absent third party, [caused or] will cause the particularized injury of the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal citations omitted).  An injury caused by "unfettered choices made by independent actors not before the court[]" is insufficient.  *Lujan*, 504 U.S. at 562.

Kateeb and Ali do not allege that any of the Defendants confiscated their property.  In fact, their allegations conclusively refute that suggestion, claiming that "their property has been literally stolen and is now occupied by armed violent settlers who claim they own that property."  Compl. ¶ 8.  But the "armed violent settlers" who allegedly "stole[]" Kateeb's and Ali's property are not defendants in this lawsuit; rather, they are "independent actors not before the court," *Lujan*, 504 U.S. at 562.

To be sure, Kateeb and Ali seek to connect the actions of the "armed violent settlers" to one or more of the agency defendants, alleging that the settlers in question "are protected by Israeli army personnel who are funded by the American Taxpayer—for example, the tax-exempt entity known as 'Friends of the IDF.'"  Compl. ¶ 8.  But those allegations reveal the problem with Kateeb's and Ali's claim to standing: they rely on a lengthy and speculative chain of inferences to suggest that the alleged confiscation of their property by foreign individuals was in some way "caused" by Defendants.  (In other words, if the Treasury Department applied the law in the way Plaintiffs seek, it would revoke the tax-exempt status of groups like 'Friends of the IDF; if groups

like 'Friends of the IDF' lost their tax-exempt status, Americans would donate less money to such groups; if Americans donated less money, those groups would have less funding; if those groups had less funding, they would offer less protection to settlers who are seizing property; if the settlers received less protection, they would seize less property—and so on.)

This is the sort of "protracted chain of causation" that courts routinely reject in analyzing the causation prong of the standing inquiry. *Fla. Audubon Soc'y*, 94 F.3d at 670; *see also, e.g.*, *Abulhawa*, 2017 WL 883609, at *6-7 (dismissing for lack of standing because "Plaintiffs' theory of causation is based on speculation upon speculation about how third parties might act" if the Department of the Treasury revoked the tax-exempt status of certain groups that support Israeli settlement expansion) (citing *Allen*, 468 U.S. at 757-59); *Bernstein v. Kerry*, 962 F. Supp. 2d 122, 128-29 (D.D.C. 2013) (holding that the plaintiffs' fear of future terrorist attacks was not fairly traceable to the provision of foreign aid to the Palestinian Authority because it required the Court to "speculate on whether defendants' funding policies were in fact aiding terrorists, whether the terrorists were using these funds for activities intended to harm plaintiffs, and whether these activities [were] leading to a 'certainly impending' injury for plaintiffs"), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014).

Because the Complaint does not allege that any injuries to Plaintiffs Kateeb or Ali were actually caused by any of the Defendants—and, in fact, confirms that the injuries were caused by independent third parties who are not before the Court—Plaintiffs Kateeb's and Ali's claims should be dismissed for lack of standing.

### 2. *Redressability*

For similar reasons, any injury suffered by Kateeb or Ali is not redressable by an order from this Court. For a complaint to survive dismissal, "it must be 'likely,' as opposed to merely

'speculative,' that the [alleged] injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (citation omitted). Here, there is no possibility that the alleged injury suffered by Kateeb or Ali—the confiscation of their property—will be redressed by a favorable decision in this case. That is fatal to their claims.

To begin with, harm suffered in the past is generally insufficient to establish standing for claims, like those at issue here, which seek only prospective injunctive relief. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *accord Abulhawa*, 2017 WL 883609, at *8-9. Rather, because injunctive relief concerns only future conduct, a plaintiff will have standing to bring such a claim only if he faces a "real and immediate threat" of future harm. *Lyons*, 461 U.S. at 102 (citation omitted); *see also Clapper*, 133 S. Ct. at 1146. Plaintiffs Kateeb and Ali cannot establish—and do not even allege—that any injuries suffered as a result of the alleged confiscation of their property are likely to recur in the future (let alone as a result of any changes, or lack thereof, to American foreign aid policy).

In addition, even if this Court were to order Defendants to terminate all foreign aid to Israel—setting aside the fact that the political-question doctrine forbids such a remedy, *see infra*, Section III—"[c]ountries respond to the suspension of foreign assistance in many ways." *Betteroads Asphalt Corp. v. United States*, 106 F. Supp. 2d 262, 268 (D.P.R. 2000). Ample speculation would be necessary to conclude that individuals and governments half-a-world-away would change their behavior in response to an order from this Court against any of the named Defendants—let alone change their behavior in a way that had any effect on Plaintiffs or their property. Redressing Plaintiffs Kateeb's and Ali's alleged injuries therefore depends upon the "exercise of broad and legitimate discretion" of third parties that the court "cannot presume either

to control or to predict," *Lujan*, 504 U.S. at 562, which is fatal under the redressability prong of the standing inquiry, as courts in the D.C. Circuit have repeatedly recognized.

For example, in *Bernstein v. Kerry*, Judge Huvelle rejected a similar theory of standing advanced by American citizens residing in Israel, who allegedly suffered injuries at the hands of terrorists supported by the Palestinian Authority, and sought to challenge foreign aid to the Palestinian Authority.  962 F. Supp. 2d at 130.  In dismissing their claims for lack of standing, Judge Huvelle characterized the "Plaintiffs' disagreement with this policy and their belief that a change in policy would reduce the threat of terrorism" as "at best, mere speculation."  *Id.*; *see also, e.g.*, *Talenti v. Clinton*, 102 F.3d 573, 575-78 (D.C. Cir. 1996) (uncertainty as to how Italy would react to the withholding of foreign assistance precluded a finding that the plaintiff's injury would be redressed); *Aerotrade Inc. v. Agency for Int'l Dev., Dep't of State*, 387 F. Supp. 974, 975 (D.D.C. 1974) (holding the plaintiff lacked standing because there was "considerable uncertainty" as to whether suspension of aid to Haiti "would aid plaintiff in collecting its debt or would tend to drive Haiti into even greater intransigence.").  This also warrants dismissal of Plaintiffs Kateeb's and Ali's claims for lack of standing.

\*     \*     \*

In sum, no plaintiff has adequately alleged that he or she suffered an injury, caused by any of the Defendants, that is likely to be redressed by a favorable ruling from this Court.  Accordingly, this Complaint should be dismissed for lack of Article-III standing.

## II.     PLAINTIFFS HAVE NO VALID CAUSE OF ACTION.

Plaintiffs' complaint should be dismissed for another independent reason: because Plaintiffs have not identified any legal basis for a private cause of action of the sort they are trying to bring.

A.      **Plaintiffs' claims are not cognizable under the Administrative Procedure Act.**

Plaintiffs' broad, programmatic attack on decades of pro-Israel policy by several different agencies—what they loosely describe as United States support for "Israel's Master Plan . . . to permanently colonize the OPT and [E]ast Jerusalem," Compl. at 6—is not a viable cause of action under the Administrative Procedure Act ("APA").  "[A]gency action" reviewable under the APA is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13); *see also* 5 U.S.C. § 706.  Because these statutorily enumerated categories all share the "same characteristic of discreteness," the Supreme Court has made clear that review of final agency action under the APA is limited to "circumscribed, discrete agency actions."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004).  That means that a plaintiff cannot use the APA to mount a generalized attack on an agency-wide (let alone government-wide) policy, or to seek broad, programmatic relief.  *See id.* at 64-65; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990).

But that is exactly what Plaintiffs are trying to do—to challenge decades of agency-wide (even government-wide) policy, all at once.  *See, e.g.*, Compl. at 6 ("For the last thirty years, agency officials have been knowingly providing direct and indirect financial assistance to the Israeli army and violent belligerent settlers in order to rid the West Bank of all non-Jews.").  Such a broad programmatic challenge is not cognizable under the APA.  Plaintiffs are generally free to challenge under the APA any "circumscribed, discrete agency action[]," *Southern Utah Wilderness Alliance*, 542 U.S. at 62, or to bring their broader grievances to "the offices of the [various agencies] or the halls of Congress, where programmatic improvements are normally made," *National Wildlife Federation*, 497 U.S. at 891.  Consequently, this wide-ranging lawsuit cannot be brought under the APA.  *See, e.g., Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While

11

a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA."); *accord Del Monte Fresh Produce N.A., Inc. v. United States*, 706 F. Supp. 2d 116 (D.D.C. 2010); *RCM Techs., Inc. v. DHS*, 614 F. Supp. 2d 39 (D.D.C. 2009).

### B.     Plaintiffs' claims are not cognizable under the Mandamus Act.

Plaintiffs also cite the Mandamus Act, 28 U.S.C. § 1361, as a statutory hook for their claims.  The Mandamus Act provides federal district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  *Id.*  Plaintiffs are not clear as to whether or not they are actually seeking mandamus relief, but to the extent they are, they are not entitled to it.

As the D.C. Circuit has explained, the remedy of "mandamus is drastic; it is available only in extraordinary situations; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a clear and indisputable right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (internal quotation marks omitted).  In addition, the "word 'duty' in § 1361 must be narrowly defined," so that "a plaintiff's legal grounds supporting the government's duty to him must be clear and compelling."  *Id.* (internal quotation marks omitted).

Plaintiffs do not come close to meeting this standard, among other reasons, because they have no "clear and indisputable right to relief"—in fact, they have no right to relief whatsoever. In addition, as Plaintiffs' claims are framed, any "duty" allegedly owed by defendants is far from "clear and compelling" or "narrowly defined"—it would be amorphous and sweeping, and would apparently be owed to every American taxpayer.  *See, e.g.*, Compl. ¶ 1 ("The State Department has a duty to protect real property located overseas owned by Americans. . . . Treasury also has a duty to Americans to enforce its tax-exempt rules and regulations. . . . DOD has a duty to protect

U.S. Armed forces personnel serving overseas.").  Plaintiffs fail to state a claim under the Mandamus Act.

> ### C.      Plaintiffs' claims are not cognizable under the Little Tucker Act.

Plaintiffs also appear to rely on the Little Tucker Act, 28 U.S.C. § 1346, as a basis for their causes of action.  *See* Compl. ¶ 4.  By its terms, the Little Tucker Act waives sovereign immunity for certain claims for money damages against the United States "not exceeding $10,000 in amount."  28 U.S.C. § 1346(a)(2).  But Plaintiffs do not seek money damages in any amount— they seek only equitable relief.  *See, e.g.*, Compl. at 66 ("WHEREFORE, the Plaintiffs listed herein hereby request that this Court order agency defendants to stop providing any and all financial and military assistance to Israel.").  And equitable relief is not available under the Little Tucker Act. *See, e.g.*, *Van Drasek v. Lehman*, 762 F.2d 1065, 1068-69 (D.C. Cir. 1985) (holding that, absent a claim for money damages, a federal district court lacks subject-matter jurisdiction under the Little Tucker Act); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS*, 490 F.3d 940, 943 (Fed. Cir. 2007) ("In order for a claim to be brought under either the Tucker Act or the Little Tucker Act, the claim must be for monetary relief; it cannot be for equitable relief, except in very limited circumstances not at issue here."); *see also Lee v. Thornton*, 420 U.S. 139, 140 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief.").  For these reasons, the Little Tucker Act is of no help to Plaintiffs.

> ### D.      Plaintiffs' claims are not cognizable under any other source of domestic, international, or foreign law.

Finally, Plaintiffs appear to rely on a smattering of other federal statutes (some civil and some criminal), international treaties, norms of international law, and even foreign laws to support their claims to relief—though it is not clear the extent to which these citations are meant only for background and context, rather than to actually provide a jurisdictional or substantive basis for

Plaintiffs' claims.  In any case, none of these sources of legal authority provides the basis for a private cause of action identified by Plaintiffs.  Because Plaintiffs rely on dozens of such provisions,[4] and because it is Plaintiffs' obligation, not the government's, to identify the source of their cause of action with a "short and plain statement," Fed. R. Civ. P. 8(a), Defendants do not address each cited provision.  Rather, it suffices to say only that none of these statutes, treaties, or norms of international law provides a private right of action for Plaintiffs to bring a civil claim in a federal district court in the United States.  *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."); *see also, e.g.*, *Abusharar v. Hagel*, 77 F. Supp. 3d 1005, 1006-07 (C.D. Cal. 2014) ("[T]he Court finds no private right of action under the Leahy Amendment.").

## III.  PLAINTIFFS' CLAIMS ARE BARRED BY THE POLITICAL-QUESTION DOCTRINE.

Plaintiffs' claims are also barred by the political-question doctrine, and may be dismissed in the alternative for that independent reason.  The political-question doctrine is "a natural outgrowth of fidelity to the concept of separation of powers."  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 111 (D.D.C. 2005).  "It is based upon respect for the pronouncements of coordinate branches of government that are better equipped and properly intended to consider issues of a distinctly

---

[4] *See, e.g.*, Compl. at 8-9 ("Agency officials have continued to fund that criminal activity, even though it violates: (a) the U.S. Constitution Law of Nations clause (Art. I Sec. 8 Cl. 10); (b) President Lincoln's 1863 U.S. Lieber Code – The Geneva Convention predecessor; (c) the U.S. war crimes statute (18 U.S.C. 2441); (d) six U.S criminal statutes including money laundering and arms trafficking; (e) America's Neutrality Act (22 U.S.C. 441); (f) the Arms Export Control Act, (g) the 1952 Mutual Defense Agreement, (h) the Fourth Geneva Convention; (i) the Hague Convention; (j) the UN Charter principles adopted by Israel in 1948; (k) Israel's war crimes statute; (l) President Clinton's 1995 Executive Order which criminalized the financing of violence in the Middle East and directed all agencies to take all appropriate measures within their authority to carry out the provisions of this order; (m) the International Genocide Convention; (n) Israel's 1948 Declaration and its 1992 Basic Human Rights Statute; (o) both Israel army and U.S army war manuals and; (p) the Universal Declaration of Human Rights.") (internal footnotes omitted).

political nature." *Id.* In *Baker v. Carr*, the Supreme Court identified six indicia of political questions, any one of which can render a claim non-justiciable:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962); *see also Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 197-98 (2012). Plaintiffs' appeal to the federal judiciary to "order agency defendants to stop providing any and all financial and military assistance to Israel," Compl. at 66, implicates several of the *Baker v. Carr* factors.

First, there is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government." *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) (discussing relevant constitutional provisions) (citing *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 803 (D.C. Cir. 1984) ("Questions touching on the foreign relations of the United States make up what is likely the largest class of questions to which the political question doctrine has been applied.").

Second, the long list of statutes, treaties, and purported obligations under domestic and international law that Plaintiffs seek to place at issue in this case, *see* Compl. at 8-9; *see also supra* at 15 n.4, provides no judicially discoverable or manageable standards for the Court to use in evaluating the President's and Congress's decisions in this area—nor do Plaintiffs point to any.

Instead, Plaintiffs have intentionally framed their challenge as a sweeping, multi-pronged attack on decades of Israel policy by a variety of actors within the federal government, leaving this Court with no meaningful legal standards to apply in analyzing Plaintiffs' sprawling and amorphous claims. *See, e.g.*, Compl. at 2 (asking the Court "to compel" Defendants to "adhere to numerous congressional mandates and resolutions, their own rules and regulations and U.S. and international human rights conventions," as well as "fifty years of clearly articulated U.S. anti-settlement public policy"). And even if the Court could invent and apply its own standards, it should decline to do so for the very reasons that make the political-question doctrine so important: the Constitution commits these sorts of sensitive foreign-affairs decisions to the political branches. *See Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("[T]he very nature of executive decisions as to foreign policy is political, not judicial. Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative. They are delicate, complex, and involve large elements of prophecy. They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil.").

Finally, judicial second-guessing of the political branches' policy decisions to extend assistance to Israel would "express[] lack of [] respect" for "coordinate branches of government" and could potentially result in "embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217; *see also Doe I*, 400 F. Supp. 2d at 112. These sorts of policy judgments are also uniquely suited to the Executive Branch, which is institutionally situated to take into account complex and evolving diplomatic and national-security considerations. *See, e.g.*, *Atl. Tele-Network v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 131 (D.D.C. 2003) ("To grant or deny a loan to a foreign nation is a decision fraught with foreign policy implications."); *see also Smith v. Obama*, 217 F. Supp. 3d 283, 300-01 (D.D.C. 2016);

*Mobarez v. Kerry*, 187 F. Supp. 3d 85, 98 (D.D.C. 2016).  In other words, "a determination of whether foreign aid to Israel is necessary . . . is a 'question uniquely demand[ing] [of a] single-voiced statement of the Government's views.'"  *Dickson v. Ford*, 521 F.2d 234, 236 (5th Cir. 1975) (quoting *Baker*, 369 U.S. at 211).

For these and other reasons, courts in the D.C. Circuit and elsewhere have repeatedly dismissed lawsuits challenging the provision of foreign aid to Israel under the political-question doctrine.  For example, in *Abusharar v. Hagel*, a similarly-styled challenge to the provision of foreign aid to Israel, the court held that "[t]he decision to provide military support to a foreign nation is a quintessential political question that th[e] [c]ourt cannot review," declining plaintiff's invitation to "exert its own judgment over a sensitive area of foreign policy."  77 F. Supp. 3d at 1006; *see also, e.g.*, *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983 (9th Cir. 2007) ("Whether to grant military or other aid to a foreign nation is a political decision inherently entangled with the conduct of foreign relations."); *Dickson*, 521 F.2d at 236 ("We hold that a determination of whether foreign aid to Israel is necessary at this particular time is a . . . decision 'of a kind for which the Judiciary has neither [the] aptitude, facilities[,] nor responsibility . . . .'"); *Mahorner*, 224 F. Supp. 2d at 53 (dismissing claim seeking "to prevent the President and the Secretary of the Treasury from sending financial aid to Israel" among other reasons, because plaintiff's "claims present political questions not subject to judicial review").  This Court should follow suit, and dismiss this action under the political-question doctrine.

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims should be dismissed with prejudice.

DATE:  June 9, 2017                    Respectfully submitted,

                                       CHAD A. READLER
                                       Acting Assistant Attorney General
                                       Civil Division

                                       CHANNING D. PHILLIPS
                                       United States Attorney

                                       ANTHONY J. COPPOLINO
                                       Deputy Director
                                       Federal Programs Branch

                                       /s/ *Stephen M. Pezzi*
                                       STEPHEN M. PEZZI
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Avenue NW
                                       Washington, DC 20530
                                       Phone (202) 305-8576; Fax (202) 616-8470
                                       Email: stephen.pezzi@usdoj.gov
                                       D.C. Bar No. 995500

                                       *Counsel for Defendants*