## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RICHARD A. SIEGEL, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-2288 |
| v. | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF THE** | ) | |
| **TREASURY, *et al.*,** | ) | |
| | ) | |
| Defendants. | ) | |

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

COME NOW the Plaintiffs herein, and hereby file their opposition to the Defendants' Motion to

Dismiss. The Defendants Motion is premised on three main arguments: 1) That Plaintiffs do not

have standing; 2) that there is no cause of action pled in the Complaint that allows Plaintiffs to

bring suit; and 3) that the political question doctrine bars this lawsuit. As explained herein, these

arguments do not hold up when evaluating them against the allegations pled in the Complaint.

For example, that the State Department has not filed a declaration of interest in this case,

suggesting that the political question doctrine does not bar this lawsuit. Accordingly, Defendants'

Motion to Dismiss should be denied.

TABLE OF CONTENTS

Introduction .................................................................................................................... 1

Table of Contents ............................................................................................................ 2

Index of Authorities ........................................................................................................ 3

Legal Standard ................................................................................................................ 5

Argument ........................................................................................................................ 7

    I.    Plaintiffs Have Standing To Bring This Complaint
        .......................................................................................................... 7

        a.   Plaintiffs Kateeb and Ali's Injuries Are a Direct Result of the Actions
           of the Defendants Herein
           .................................................................................................. 8

    II.   Plaintiffs Bring Well Recognized Causes of Action
        ........................................................................................................ 10

    III.  The Political Question Doctrine Does not Bar this Lawsuit
        ........................................................................................................ 12

    IV.  Conclusion
        ........................................................................................................ 15

# <u>INDEX OF AUTHORITIES</u>[1]

**CASES:**

*Abbas v. Foreign Policy Group, LLC,*
    783 F. 3d 1328 (D.C. Cir. 2015)................................................................................6

*Abusharar v. Hagel,*
    77 F. Supp 3d 1005 (C.D.Ca. 2014)........................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................5

*\*Baker v. Carr,*
    369 U.S. 186 (1962) ...............................................................................12, 13, 14, 15

*Bernstein v. Kerry,*
    962 F. Supp 2d 122 (D.D.C. 2013) ...........................................................................9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................5, 6

*Beneficial Nat'l Bank v. Anderson,*
    539 U.S. 1 (2003)........................................................................................................5

*Browning v. Clinton,*
    292 F.3d 235, 242 (D.C.Cir. 2002)............................................................................6

*Dickson v. Ford,*
    521 F.2d 234 (5th Cir. 1975) ...................................................................................14

*Florida State Conference of N.A.A.C.P. v. Bowning,*
    522 F.3d 153 (11th Cir. 2008)...................................................................................9

*In re Cheney,*
    406 F.3d 723 (D.C. Cir. 2005) ................................................................................12

*Kowal v. MCI Communications Corp.,*
    16 F.3d 1271 (D.C.Cir. 1994)....................................................................................6

*Louisville & Nashville R. Co. v. Motely,*
    211 U.S. 149, 152 (1908)...........................................................................................6

*Lutheran Med. Ctr. v. Daines,*
    17 Misc. 3d 1109 (A) (N.Y. Sup. Ct. 2007) ...........................................................10

---

[1]     Asterisks identify those authorities on which Plaintiffs chiefly rely.

*Mahorner v. Bush*,
224 F. Supp. 2d 48 (2002) ............................................................................. 14

*Norton v. S. Utah Wilderness Alliance*,
542 U.S. 55, 62 (2004) ............................................................................ 10, 11

*Oneida Indian Nation of N.Y. v. County of Oneida*,
414 U.S. 661 (1974) ...................................................................................... 6

*Sierra Club v. Morton*,
405 U.S. 727 (1972) ....................................................................................... 7

*Sitz v. Kan. Dep't of Soc & Rehab. Servs*,
2003 Kan. App. Unpub. LEXIS 84 ____ ..................................................... 10

*Sokolow v. Palestine Liberation Organization*,
583 F.Supp.2d 451 (S.D.N.Y. 2008) ........................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ......................................................................................... 6

*Summit Health, Ltd. v. Pinhas*,
500 U.S. 32 (1991) ......................................................................................... 6

*Ungar v. Palestinian Authority*,
315 f.supp.2 164 (D.RI 2004) ...................................................................... 12

*\*United States v. SCRAP*,
412 U.S. 669 (1973) ................................................................................... 8, 9

**STATUTES AND RULES:**

U.S. Const. Art. I, § 8, cl. 10 .......................................................................... 8
5 U.S.C. § 702 ................................................................................................. 7
5 U.S.C. § 704 ................................................................................................. 7
5 U.S.C. § 706 ................................................................................. 11, 13, 15
28 U.S.C. § 1361 ........................................................................................... 12
Fed. R. Civ. P. 8(a)(2) .................................................................................... 5
Executive Order 12947 ........................................................................... 14, 15

**Legal Standard**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations, and must rise above the mere conceivability or possibility of unlawful conduct that entitles to pleader to relief. *Id*. at 678-79. A complaint must be "factually suggestive." *Twombly*, 550 U.S. at 557 n.5. A claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007) (citations and ellipsis omitted). The Court emphasized that a complaint must contain a "statement of circumstances, occurrences, and events in support of the claim presented" and not mere conclusory statements. *Id*. at 556 (citing 5 *Wright & Miller, Federal Practice and Procedure* § 1202, at 94-95 (2004)). Although a claimant need not set out in detail the facts underlying his claim, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing' . . . of entitlement to relief." *Id*.

When determining whether a claim arises under federal law, a court will "examine the 'well pleaded' allegations of the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (quoting

*Louisville & Nashville R. Co. v. Motely*, 211 U.S. 149, 152 (1908). A federal court lacks jurisdiction over a claim involving federal law "only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citing *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)). "The test for dismissal is a rigorous one and if there is any foundation or plausibility to the claim, federal jurisdiction exists." 13D *Wright & Miller* § 3654, pp. 244-45.

"[T]he federal law reflected by the plaintiff's well-pleaded complaint [must] be sufficiently central to the dispute to support federal question jurisdiction." 13D Wright & Miller § 3562, p. 174. A case generally arises under federal law when federal law creates the cause of action. In reviewing Defendant's motion to dismiss, this Court must assume the truth of the facts alleged in the Complaint. *See Summit Health, Ltd. v. Pinhas*, 500 U.S. 32, 325 (1991); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir. 2002). The complaint is to be construed liberally in the Plaintiffs' favor, and the Court should grant Plaintiffs "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994).

The D.C. Circuit has recognized that "[a] well-pleaded complaint 'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Abbas v. Foreign Policy Group, LLC*, 783 F. 3d 1328 (D.C. Cir. 2015) (quoting *Twombly* at 556). One of the reasons why, is that the Defendant always has an additional remedy to pursue before trial, i.e. if the complaint survives a motion to dismiss, a defendant may still move before trial for summary judgment under Rule 56. *Id*. Thus, it is difficult for

the Defendant to assert prejudice at this early stage in the litigation.

## I.       Plaintiffs Have Standing to Bring this Complaint

The Administrative Procedure Act provides in relevant part that "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review of the final agency action." 5. U.S.C. § 704. As outlined in great detail in the Complaint, Congress and the Executive Branches have adopted very specific rules and regulations for Defendant Agencies to follow, yet Defendants completely ignore these mandates. *See* Compl. at 2-3, 5, 57, 66, ¶¶ 12, 19, 21, 85, 91.   As a result, Plaintiffs have no other remedy for their grievances but to seek relief from the Court.

Accordingly, Plaintiffs have standing to bring this suit under the APA, as they seek review of the Defendant Agencies' actions for being both arbitrary and capricious, and resulting in the loss of real property in the case of Plaintiffs Kateeb and Ali, described in greater detail *infra*. Such a basis for standing has been long recognized. For example, in *Sierra Club v. Morton*, 405 U.S. 727, the Supreme Court held that agency action which affected environmental, aesthetic, or a recreational interest could qualify as an injury in fact for standing purposes. The case at bar, moreover, has a much more concrete injury advanced by the Plaintiffs than was the case in *Sierra Club*. In addition, Plaintiffs have standing to bring this claim as outlined in the Complaint in order to enforce the "Law of Nations" doctrine specifically provided for by the Founding Fathers in the Constitution to ensure the United States adhered to International Law for which it

is bound by. *See* Constitution, Art. I Sec. 8 Cl. 10; Compl. at ¶ 61. Plaintiffs thus have standing to bring this Complaint, as there is no other avenue for them to seek relief—especially when the Defendant Agencies otherwise ignore the clear mandates given to them by the political branches.

### a.   Plaintiffs Kateeb and Ali's Injuries Are a Direct Result of the Actions of the Defendants Herein

Specifically as to Plaintiffs Kateeb and Ali, Defendants assert that they have no standing for failure to meet the causation and redressability prongs of Article III standing. As for the causation prong, Defendants argue that causation cannot be connected to the agency Defendants because Plaintiffs "rely on a lengthy and speculative chain of inferences," as their injuries were instead "caused by independent third parties." Defendant's Motion at 7-8. What Defendants fail to point out with any of their cited cases, however, is that the Supreme Court has found proper standing in cases with a far more complicated chain of events. *See United States v. SCRAP*, 412 U.S. 669 (1973). The chain of events that led to standing in *U.S. v. SCRAP* was reliant upon hypothetical actions by third party actors, in specific contrast to the allegations described herein. As the Plaintiffs have outlined in the complaint, the Israeli settlements are completely dependent for their survival and growth on funds received from the Defendant Agencies. They are therefore not independent third party actors, but rather third parties who are wholly dependent on the financing they receive.

The resulting injuries are therefore not caused merely by independent third parties as Defendants assert, but as a direct result of the Defendant Agencies' action, providing a direct cause of action against the Defendants to redress the Plaintiffs' injuries. It is well recognized "[t]he fact that the potential injury would be the result of a chain of events does not always preclude standing." *See 15-101 Moore's Federal Practice – Civil § 101.40*:

> For example, in *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, the Supreme Court held that an organization would be affected by a chain of third-party responses to an Interstate Commerce Commission rate decision satisfied the injury-in-fact component of standing…However, it is not the only case in which allegations were held sufficient to satisfy the injury-in-fact requirement even though the injury was dependent on a chain of events. The probability of each individual event occurring and whether the events' occurrence is spatially and temporally determinate.

*Id*. (*citing United States v. SCRAP* at 688-690 (allegations that rate increase would cause increased use of nonrecyclable commodities, resulting in use of more natural resources to produce such goods, come of which might be taken from area in which plaintiff's members lived, and resulting in more refuse that might be discarded in national parks area, "if proved, would place [plaintiff's members] squarely among those persons injured in fact by the Commission's action.") and (*Florida State Conference of N.A.A.C.P. v. Bowning*, 522 F.3d 153, 1162-1164 (11th Cir. 2008). Indeed, in the recent case of *Osborn v. Visa Inc.*, the D.C. Circuit reversed a District Court decision finding that "the plaintiffs had failed to plead adequate facts to establish standing" based on a chain of causal events, noting that the allegations were well pled despite the chain of causation analysis employed. 797 F.3d 1057, 1064, 1069. (D.C. Cir. 2015).

Defendants also cite *Bernstein v. Kerry*, but this case is again distinguishable to the case at bar. In *Bernstein*, the Court dismissed the Plaintiffs' claims because their alleged injury "was an emotional response to the risk of loss," not a government policy that would actually cause plaintiffs damages as in *SCRAP*. 962 F. Supp 2d 122, 127 (D.D.C. 2013). In further contrast to the plaintiffs in *Bernstein*, Plaintiffs Ali and Kateeb have pled that the Defendants' financing of Israeli settlements has directly caused their injuries, as the Israeli army—funded by the Defendants—protects Palestinian real property stolen by the settlers. *See i.e.* Compl. ¶ 8-9, 56, 63, 85.

Contrary to the Defendants' argument, a ruling in favor of Plaintiffs Kateeb and Ali would redress their grievances, as without the continuing funding from the Defendant Agencies,

settlers and Israeli army personnel would be unable to maintain and support the settlements that encompass Plaintiffs' stolen land. *See i.e.* Compl. ¶ 68. The Motion to Dismiss should therefore by denied.

## II.    **Plaintiffs Bring Well Recognized Causes of Action**

Defendants argue the Plaintiffs have not pled a valid cause of action in part because the Administrative Procedure Act ("APA") limits review of final agency action under the APA "to 'circumscribed, discrete agency actions.'" Defendants' Motion at 11 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004). On this basis, Defendants try to assert that Plaintiffs are only seeking "broad, programmatic relief" that cannot be sought for under the APA. Defendants' Motion at 11. What Defendants fail to address, however, is that Plaintiffs specifically seek "circumscribed, discrete agency action" for the Defendants' arbitrary and capricious double standards utilized when applying their rules and regulations to Israel, as "Congress prohibits certain types of assistance from being provided to foreign security services implicated in human rights abuses." Compl. at 36 (*quoting* the U.S. Government Accountability Office); *see also* Compl. ¶¶ 19, 21-22, 85 – 103.

Courts have found that agencies engage in "arbitrary and capricious" conduct when their officials either adopt a double standard or violate their own regulations. *See Sitz v. Kan. Dep't of Soc & Rehab. Servs*, 2003 Kan. App. Unpub. LEXIS 84; *Lutheran Med. Ctr. v. Daines*, 17 Misc. 3d 1109 (A) (N.Y. Sup. Ct.). The Complaint specifically outlines specific agency conduct that Plaintiffs' seek to have corrected as the agency's actions thereto are arbitrary and capricious. *See* Compl. ¶¶ 18, 22, 85 – 103; ("All agency officials have also ignored former Secretary of State Baker's 1992 mandate that no U.S. aid be used to finance the Israeli settlement enterprise or the commission of human rights

violations" Compl. ¶ 91; "neither agency [Treasury and State Department] has designated

a single pro-occupation tax-exempt entit[y]…and have routinely designated thousands of

Muslim individuals and entities as terrorists." Compl. ¶ 96; "The DOD has routinely

disregarded its own rules and regulations in order to facilitate the sale of military

equipment to Israeli civilian entities." Compl. ¶103.

   This arbitrary and capricious conduct on the part of Defendants is reviewable by

this Court under the APA, 5 U.S.C. 701-706(2)(A), with the Court able to "hold unlawful

and set aside agency action, finding, and conclusions found to be—(A) arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706. The Complaint provides great detail as to how the Defendants' actions are not only

arbitrary and capricious, but not in accordance with the law. Unlike the plaintiffs in

*Norton v. S. Utah Wilderness Alliance*, Plaintiffs herein specifically seek to have the

agencies enforce statutes already codified as law by the political branches by stopping

financial aide to Israel—a specific action that they can and should take consistent with

the congressional mandates referenced in the Complaint. *See for example* Compl. at 8,

36-37, 57, 66 ¶¶ 8-13, 17, 60-62, 77-78, 96. Such an order would fall under both "an

agency statement of . . . future effect designed to implement, interpret, or prescribe law or

policy" and a "prohibition . . . or taking [of] other compulsory or restrictive action"

required under the APA. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004)

(quoting the APA § 551).  Accordingly, this Court has authority to hear and decide the

case.

   Defendants also argue that "Plaintiffs' claims are not cognizable under the

Mandamus Act," but this too is not the case. As noted by the Defendants,  the Mandamus

Act, 28 U.S.C. § 1361  provides federal district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Motion to Dismiss at 18. Although Defendants do note that relief in the form of a mandamus is typically considered to be "available only in extraordinary situations," Plaintiffs here assert such a claim. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005). Defendant agencies have completely ignored clear mandates given to them by the political branches, resulting in the injuries suffered by the Plaintiffs such as the loss of property for Plaintiffs Ali and Kateeb. By ignoring their own rules and regulations through adhering to an arbitrary and capricious standard in their application to Israel, Plaintiffs have been left with no other choice but to seek relief through a court order. This is exactly the kind of "extraordinary situation" where there are no other possible routes for relief contemplated by the Court. *Id*.

### III.     The Political Question Doctrine Does not Bar this Lawsuit

A number of Courts have pointed out that non justiciability doctrine is one of political questions, and not political cases. *See* estates of *Ungar v. Palestinian Authority* 315 f.supp.2 164, 174 (D.RI 2004). As noted in *Sokolow*, "an action does not lie beyond judicial cognizance solely because it raises questions touching upon foreign relations" *Sokolow v. Palestine Liberation Organization*, 583 F.Supp.2d 452 (SDNY 2008) citing *Baker v Carr, 369 U.S. 186, 211 (1962)*. In determining whether or not a case is barred by the political question doctrine, a Court first determines whether or not the State Department has actually filed a declaration of interest in the case. That would suggest that the State Department views the case as being political in nature. A court then looks

to the six factors outlined in *Baker v. Carr*. As fully detailed in the Complaint, none of the six *Baker* factors apply here to bar the complaint under political question.

Defendant's analysis of the *Baker* factors, for example, fails to note that the relief Plaintiffs seek is already in line with U.S. official policy—thus not requiring this Court to make a decision that is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *See for example* Compl. at 36, 57, 66, ¶¶ 56, 62, 76, 77, 86, 87, 92. The Court's standards for resolving the issues raised in the complaint fall under evaluating the Agency's conduct using an arbitrary and capricious standard, which is illegal as proscribed by Congress. *See i.e.* 5 U.S.C. § 706. A decision by the Court would simply determine if the Defendant Agencies are acting arbitrarily and capriciously when it comes to providing aid to Israel, and ordering them to correct this if so. Such a decision would not express a lack of respect for the coordinate branches of government or possibility of embarrassment, as the policies Plaintiffs seek to be enforced are already well defined. *See* Compl. at 36, 57, 66, ¶¶ 56, 62, 76, 77, 86, 87, 92. For example, Defendant DOD is opposed to the use of military force against the civilian population. However, the Israeli army, which is the recipient of millions of dollars in financial aide, has repeatedly ignored this decision courtesy of at least three incursions into the Gaza Strip resulting in large civilian casualties.

Indeed, this case is distinguishable from *Abusharar v. Hagel*, as unlike *Hagel*, Plaintiffs herein seek an order that the Defendants comply with clear congressional mandates which they heretofore have ignored by sending financial aide to Israel. 77 F. Supp. 3d, 1005, 1006 (C.D.Ca. 2014). Unlike *Abusharar*, Plaintiffs are not asking "the Court to exert its own judgment over a sensitive area of foreign policy," but rather that

the Court order Defendants to abide by their own clearly mandated foreign policy as already outlined by the political branches. *Id*. at 3; *See* Compl. Ex. A; Compl. ¶ 3. The same can be said for Defendants' use of *Dickson*, 521 F.2d at 236 and *Mahorner*, 224 F. Supp. 2d at 53, as Plaintiffs herein are not asking the Court to decide foreign policy issues, but rather to issue an order that Defendants Agencies follow the law as already clearly proscribed to them. *Id*.

In directly applying the six *Baker* factors, it is clear none of them would block the Complaint from going forward: 1). Plaintiffs seek an order requiring Defendant Agencies to comply with their own rules and mandates as already prescribed to them by the political branches, which the Defendants arbitrarily and inexplicably ignore—something well within the Court's power to do without any change or comment on what the political branches have already decided. 2). The Court need only examine the statutes and orders given to the Defendant Agencies by the political branches as already identified by the Plaintiffs, and order Defendants to follow them, something well within discoverable and manageable standards for the Court to resolve. *See* President Clinton's 1995 Executive Order 12947.

3). The Court would not need to make any policy determination to order Agencies to follow their own rules and regulations, as these have already been decided and directed to the Agencies by the political branches. Plaintiffs simply seek their enforcement. 4). An order from the Court to follow the rules and regulations of the political branches would in fact be showing them great respect and deference, as the Court would be enforcing the mandates Congress and the Executive branch have both set forth for the Defendant Agencies to adhere to. 5). It is not unusual for a Court to order an Agency to adhere to

rules and regulations it arbitrarily and capriciously ignores, and Congress has written specific statutes for the Court to hear such cases. *See* 5 U.S.C. 706(2)(A). 6). As the political branches have already made very clear pronouncements on the application of these statutes and rules, (i.e. President Clinton's 1995 Executive Order 12947), a Court Order for their enforcement would not cause multifarious pronouncements by various departments. Thus none of the factors in *Baker v. Carr* apply to the Plaintiffs complaint, making dismissal under the political question doctrine unwarranted.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' Motion to Dismiss.

Respectfully Submitted,

*/s/ Martin F. McMahon*
Martin F. McMahon, Esq.
D.C. Bar Number: 196642
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
(202) 862 - 4343
mm@martinmcmahonlaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiffs' Opposition to the Motion to Dismiss has been made through the Court's electronic transmission facilities on the 23rd day of June, 2017.

*/s/ Martin F. McMahon*
Martin F. McMahon, Esq.
D.C. Bar Number: 196642
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
(202) 862 - 4343
*Counsel for Plaintiffs*