# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                  )

RICHARD A. SIEGEL, *et al.*,       )

                                  )

     Plaintiffs,             )

                                    )

         v.                )         Case No. 16-cv-2288 (RDM)

                                    )

UNITED STATES DEPARTMENT    )

OF THE TREASURY, *et al.*,     )

                                    )

     Defendants.           )
_____)

## REPLY IN SUPPORT OF MOTION TO DISMISS

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

CHANNING D. PHILLIPS
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

STEPHEN M. PEZZI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone (202) 305-8576; Fax (202) 616-8470
Email: stephen.pezzi@usdoj.gov
D.C. Bar No. 995500

*Counsel for Defendants*

## INTRODUCTION

Defendants have moved to dismiss for three independent reasons: (1) none of the Plaintiffs has standing, (2) Plaintiffs have not identified any private cause of action that would allow them to bring claims of this sort, and (3) the political-question doctrine bars their claims. Plaintiffs' opposition brief is non-responsive to much of Defendants' motion, and to the extent it addresses those issues, it confirms that any or all of these threshold defects warrant dismissal of Plaintiffs' complaint in its entirety.   Defendants have little doubt that Plaintiffs hold sincere convictions with respect to Israeli settlement activity in the West Bank, and equally strong views about the role of the United States government in allegedly supporting that activity, even indirectly.   But these sorts of generalized grievances about sensitive foreign-policy judgments by the political branches are not suited to resolution in a federal courtroom.   For the reasons set forth below and in Defendants' motion to dismiss, Plaintiffs' claims should be dismissed.

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING.

As Defendants explained in their motion, none of the Plaintiffs has alleged a cognizable Article-III injury that was caused by Defendants or is likely to be redressed by a ruling from this Court.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("MTD"), Docket No. 24, at 4-10.  The vast majority of Plaintiffs allege only that they, as federal taxpayers, believe their government to be violating the law—a theory of standing that is foreclosed by binding precedent.  *See* MTD at 4-6. As for the only two Plaintiffs who allege anything more than their disagreement with government policy—Linda Kateeb and Ali Ali, who both allege that their property was confiscated by "armed violent settlers" in the West Bank, First Am. Compl. ("Compl."), Docket

No. 2, ¶ 8—their injuries were neither caused by Defendants, nor would they be redressed by a victory in this case. *See* MTD at 7-10.

Plaintiffs hardly attempt to refute these arguments. Instead, Plaintiffs suggest that the existence of a cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, is sufficient to confer standing. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), Docket No. 25, at 7-8. Plaintiffs are mistaken. Setting aside the fact that there is no cause of action under the APA to bring this sort of claim, *see* MTD at 11-12, *see also infra* Section II, the existence of a private cause of action is a separate and independent requirement from "the irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Article III of the U.S. Constitution requires every plaintiff, in every federal case, to show (1) that he has suffered an injury in fact, (2) that was caused by the defendant's conduct, and (3) that is likely to be redressed by a favorable ruling. *Id.* The additional requirement of identifying a private right of action that states a claim to relief has no bearing on the question of standing. In fact, on Plaintiffs' theory of standing, the holding of *Lujan v. Defenders of Wildlife* itself would be in error, as the *Lujan* plaintiffs brought suit under the citizen-suit provision of the Endangered Species Act—a private cause of action created by a federal statute. *See id.* at 571-72.

Plaintiffs also argue that because "there is no other avenue for them to seek relief," the Court must hold that they have standing. Opp'n at 8; *see also id.* at 7 ("Plaintiffs have no other remedy for their grievances but to seek to relief from this Court."). This argument is also foreclosed by binding precedent—"'the assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing.'" *Clapper v. Amnesty Int'l USA*,

133 S. Ct. 1138, 1154 (2013) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982)).

As for causation, Plaintiffs struggle mightily to distinguish the litany of cases cited by Defendants in which courts have rejected standing when the alleged connection between a plaintiff's injury and a defendant's conduct requires a lengthy and speculative chain of inferences—including cases applying that general principle to claims challenging foreign aid to Israel or to the Palestinian Authority. *See, e.g.*, *Abulhawa v. Dep't of the Treasury*, --- F. Supp. 3d ----, No. 15-cv-2186 (RDM), 2017 WL 883609 (D.D.C. Mar. 4, 2017), at *6-7 (dismissing for lack of standing because "Plaintiffs' theory of causation is based on speculation upon speculation about how third parties might act" if the Department of the Treasury revoked the tax-exempt status of certain groups that support Israeli settlement expansion) (citing *Allen v. Wright*, 468 U.S. 737, 757-59 (1984)); *Bernstein v. Kerry*, 962 F. Supp. 2d 122, 128-29 (D.D.C. 2013) (holding that the plaintiffs' fear of future terrorist attacks was not fairly traceable to the provision of foreign aid to the Palestinian Authority because it required the Court to "speculate on whether defendants' funding policies were in fact aiding terrorists, whether the terrorists were using these funds for activities intended to harm plaintiffs, and whether these activities [were] leading to a 'certainly impending' injury for plaintiffs"), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014).

Plaintiffs assert that "Ali and Kateeb have pled that the Defendants' financing of Israeli settlements has directly caused their injuries, as the Israeli army—funded by Defendants—protects Palestinian real property stolen by the settlers." Opp'n at 9 (citing Compl. ¶¶ 8-9, 56, 63, 85). In fact, Plaintiffs have pled no such thing. Setting aside the conclusory allegation (made only in Plaintiffs' opposition brief; not in their Complaint) about the "direct[] cause" of their alleged injuries, the factual allegations in the complaint, if presumed true, confirm that any

injury was caused not by Defendants, but by unidentified "armed violent settlers" in Israel. *See, e.g.*, Compl. ¶ 8 (Kateeb's and Ali's "property has been literally stolen and is now occupied by armed violent settlers who claim they own that property"). As explained in the motion to dismiss, that narrative is fatal to Plaintiffs' claim to standing, because the "armed violent settlers" who allegedly "stole[]" Kateeb's and Ali's property are not defendants in this lawsuit; rather, they are "independent actors not before the court," *Lujan*, 504 U.S. at 562. And the tenuous connection (if any) between any such settlers in the West Bank and any policy decisions made in Washington, D.C. is insufficient to confer standing. *See, e.g.*, *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) ("Such a protracted chain of causation fails both because of the uncertainty of several individual links and because of the number of speculative links that must hold for the chain to connect the challenged acts to the asserted particularized injury. Most, if not all, of the individual links in the chain alleged by appellants depend on some allegation that cannot be easily described as true or false; as noted, we routinely refuse to permit such predictive assumptions to establish standing.").

Finally, as to redressability, Plaintiffs offer no substantive response, other than one conclusory sentence asserting that "a ruling in favor of Plaintiffs Kateeb and Ali would redress their grievances" because "without the continuing funding from the Defendant Agencies settlers and Israeli army personnel would be unable to maintain and support the settlements that encompass Plaintiffs' stolen land." Opp'n at 9 (citing Compl. ¶ 68). Setting aside the fact that the cited paragraph of the complaint says no such thing, that contention is non-responsive to Defendants' specific argument that Plaintiffs Kateeb and Ali—who seek only prospective injunctive relief—do not allege that any injuries suffered as a result of the alleged confiscation of their property are likely to recur in the future (let alone as a result of any changes, or lack

thereof, to American foreign aid policy).  *See* MTD at 9 (*citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (holding that harm suffered in the past is generally insufficient to establish standing for claims seeking only prospective injunctive relief)).  Nor does it refute the more general argument that even if Plaintiffs were to prevail in this lawsuit, there is no reason to think that any injury suffered (*i.e.*, their allegedly stolen property) would actually be remedied. Accordingly, Defendants' arguments about redressability—and the many cited examples of dismissals for lack of redressability on similar facts, *see* MTD at 9-10—stand virtually unchallenged.  The Complaint may be dismissed in its entirety for lack of standing on that basis alone.

## II.       PLAINTIFFS HAVE NO VALID CAUSE OF ACTION.

Plaintiffs' opposition clarifies that Plaintiffs purport to rely on a private cause of action under only two statutes: the APA and the Mandamus Act.  *Compare* Opp'n at 10-12, *with* MTD at 14 n.4 (referring to dozens of potential sources of law arguably relied upon in Plaintiffs' complaint).[1]  But as explained below and in the motion to dismiss, neither the APA nor the Mandamus Act supports claims like those at issue here.

As for the APA, Plaintiffs seek to raise a claim under 5 U.S.C. § 706, which generally provides that a court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Defendants have explained that this provision does not apply here, because Plaintiffs make a programmatic, government-wide attack on decades of foreign policy—rather than challenging any "circumscribed, discrete agency action[]."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63

---

[1] As for the Little Tucker Act, the Leahy Amendment, and the other sources of law— foreign, domestic, and international—that were mentioned in Plaintiffs' complaint, Plaintiffs' opposition confirms that the Court need not address whether any or all of them provide for a private right of action.

(2004); *see also Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA.").

In response, Plaintiffs argue that they "seek to have the agencies enforce statutes already codified as law by the political branches by stopping financial aide [sic] to Israel—a specific action that they can and should take consistent with the congressional mandates referenced in the Complaint." Opp'n at 11. But that summary of Plaintiff's desired relief (spanning an unspecified number of statutes that allegedly apply to an unspecified number of agency actions or inactions) confirms Defendants' reading of the Complaint—that Plaintiffs seek broad, programmatic changes to decades of Executive Branch policy, rather than challenging any specific, discrete, final agency action by one or more of the Defendants. *See, e.g.*, Compl. at 6 ("For the last thirty years, agency officials have been knowingly providing direct and indirect financial assistance to the Israeli army and violent belligerent settlers in order to rid the West Bank of all non-Jews."); *id.* at 2 (asking the Court "to compel" Defendants to "adhere to numerous congressional mandates and resolutions, their own rules and regulations and U.S. and international human rights conventions," as well as "fifty years of clearly articulated U.S. anti-settlement public policy"). That sort of claim is not cognizable under the APA.

Finally, as Defendants also explained in their opening brief, the Mandamus Act does not apply. The remedy of "mandamus is drastic; it is available only in extraordinary situations; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a clear and indisputable right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (internal quotation marks omitted); *see also id.* (holding that the "word 'duty' in

§ 1361 must be narrowly defined," and that "a plaintiff's legal grounds supporting the government's duty to him must be clear and compelling").  Plaintiffs do not satisfy that standard here, because they have no right to relief (let alone a clear and indisputable one), and any "duty" allegedly owed by defendants is neither "clear and compelling" nor "narrowly defined"—it would apparently be owed to every American taxpayer, foreign property owner, or member of the armed forces.  *See* Compl. ¶ 1 ("The State Department has a duty to protect real property located overseas owned by Americans. . . . Treasury also has a duty to Americans to enforce its tax-exempt rules and regulations. . . . DOD has a duty to protect U.S. Armed forces personnel serving overseas.").  Plaintiffs' conclusory assertions to the contrary are unpersuasive, and are entitled to no weight from the Court.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE POLITICAL-QUESTION DOCTRINE.

Defendants' motion to dismiss also explained why Plaintiffs' claims are independently barred by the political-question doctrine, which forecloses judicial second-guessing of the sensitive foreign-affairs judgments that Plaintiffs challenge here.  In response, Plaintiffs begin with a misstatement of the law, accompanied by no citations to authority: "In determining whether or not a case is barred by the political question doctrine, a Court first determines whether or not the State Department has actually filed a declaration of interest in the case." Opp'n at 12.  In fact, no such requirement exists, and courts routinely dismiss cases under the political-question doctrine without any such declaration from the Department of State.  In any event, to the extent the views of the Department of State, in particular, are critical to the question of whether the political-question doctrine applies to a given case, here the Department of State (along with the Secretary of State, in his official capacity) is one of the Defendants in this lawsuit, and the Department's position is clear: the complaint should be dismissed under the

political-question doctrine, *see* MTD at 14-17.  Plaintiffs cite no authority for the proposition that

the Department of State must file a declaration in order to present this legal argument.[2]

Plaintiffs then offer only one substantive response to Defendants' political-question

argument: that because (in Plaintiffs' view) federal law already requires Defendants to do exactly

what Plaintiffs seek here (namely, to cease all direct and indirect financial support for Israel), the

concerns underlying the political-question doctrine (and the *Baker v. Carr* factors) do not apply.

*See, e.g.*, Opp'n at 15 ("As the political branches have already made very clear pronouncements

on the application of these statutes and rules (i.e. President Clinton's 1995 Executive Order

12947), a Court Order for their enforcement would not cause multifarious pronouncements by

various departments.").

This argument is flawed in several respects.  It first assumes Plaintiffs' own

conclusions—not only that the law requires what Plaintiffs believe it does, but also that the

policies at issue are merely ministerial, and thus may be easily enforced by court order.  That is

not the case.  More fundamentally, the political-question issues in this case concern whether an

Article-III court should review and grant judicial relief with respect to the manner in which the

Executive Branch has exercised its broad foreign-policy discretion in carrying out the

complicated and sensitive foreign-aid policies at issue.  And in this particular setting, courts

across the country have invoked the political-question doctrine to dismiss challenges, just like

this one, to foreign aid to Israel.  *See, e.g.*, *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983 (9th Cir.

2007); *Dickson v. Ford*, 521 F.2d 234, 236 (5th Cir. 1975); *Abusharar v. Hagel*, 77 F. Supp. 3d

---

[2] To be sure, the submission of such a declaration may have significance in certain cases raising sensitive foreign-affairs issues between private litigants, or in cases between a private litigant and a foreign entity or a foreign government, in which (unlike here) the federal government is not a named party.  No such declaration is required, however, for a court to find that a claim is non-justiciable on political question grounds.

1005, 1006 (C.D. Cal. 2014); *Mahorner v. Bush*, 224 F. Supp. 2d 48, 53 (D.D.C. 2002), *aff'd*,

No. 02-5335, 2003 WL 349713 (D.C. Cir. Feb. 12, 2003).  Plaintiffs offer no sound reason to

deviate from this robust line of authority.[3]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the memorandum of points and

authorities in support of Defendants' motion to dismiss, all of Plaintiffs' claims should be

dismissed with prejudice.

DATE:  June 30, 2017                         Respectfully submitted,

                                             CHAD A. READLER
                                             Acting Assistant Attorney General
                                             Civil Division

                                             CHANNING D. PHILLIPS
                                             United States Attorney

                                             ANTHONY J. COPPOLINO
                                             Deputy Director
                                             Federal Programs Branch

                                             /s/ *Stephen M. Pezzi*
                                             STEPHEN M. PEZZI
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue NW
                                             Washington, DC 20530
                                             Phone (202) 305-8576; Fax (202) 616-8470
                                             Email: stephen.pezzi@usdoj.gov
                                             D.C. Bar No. 995500

                                             *Counsel for Defendants*

---

[3] Moreover, in any case in which the political-question doctrine is raised, a plaintiff is likely to assert that the defendant is required by law to take the action requested.  But the question is whether the type of sensitive policy judgment at issue is one that is suited to judicial review, and that question is not answered merely by plaintiff's allegation that the law requires certain action by the government.